868 F.2d 1525
 109 Lab.Cas. P 35,099
 Ann McLAUGHLIN, Secretary of Labor, U.S. Department of
Labor,[1] Plaintiff-Appellee,
v.
ELSBERRY, INC., Elsberry and Elsberry, Inc., Waterberry
Farms, Inc., Elsberry Brothers, Inc., Ray E.
Holcomb, Defendants-Appellants.
 No. 87-3381.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 15, 1988.
As Amended March 17, 1989.
 
 Michael C. Towers, Fisher & Phillips, James J. McDonald, Jr., Fisher & Phillips, Atlanta, Ga., for defendants-appellants.
 Kathryn A. Oberly, Mayer, Brown & Platt, Washington, D.C., for amicus curiae, American Farm Bureau Federation.
 John F. Cordes and Peter R. Maier, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before KRAVITCH, Circuit Judge, HENDERSON* and HENLEY**, Senior Circuit Judges.
 HENLEY, Senior Circuit Judge:
 
 
 1
 Appellants were enjoined by the district court from prohibiting entry by Department of Labor personnel (hereinafter DOL) onto appellants' fields to interview migrant workers as authorized by the Migrant and Seasonal Agricultural Worker Protection Act (hereafter MWPA), 29 U.S.C. Secs. 1801-1872. Brock v. Elsberry, 663 F.Supp. 359 (M.D.Fla.1987). Appellants raise two primary arguments in this appeal: first, that their conduct of non-forcible resistance to DOL's demands for entry was not a violation of the MWPA and therefore not enjoinable; and second, to the extent the MWPA authorizes warrantless entry, it is unconstitutional. We affirm in part and vacate in part the order of the district court.
 
 
 2
 Appellants (hereafter collectively referred to as Elsberry) through their corporations operated 2,500 acres of citrus and tomato farms near Ruskin, Florida. In 1981 the Department of Labor received complaints that Elsberry was violating the Farm Labor Contractor Registration Act (FLCRA). 7 U.S.C. Secs. 2041-2053 (superseded by the MWPA). The alleged violations included: (1) failing to inform workers of the terms of employment; (2) making improper payments and deductions; and (3) beatings of workers. The DOL initiated an investigation in the fall of 1981.
 
 
 3
 On DOL's first visit Elsberry consented to the inspection of records, but refused to allow migrant farmworkers to be interviewed on the premises unless an Elsberry employee was present during the interview. On December 15, 1981 DOL and Elsberry reached an agreement permitting interviews with farmworkers and crew leaders. When DOL attempted to conduct the interviews on January 20, 1982 Elsberry reasserted the demand to be present at the interviews. DOL returned again a week later with the same result.
 
 
 4
 In March, 1982 the parties reached an agreement that Elsberry could be present during interviews with crew leaders, but not with migrant workers. When DOL arrived to conduct the interviews in April, Elsberry insisted again on having an employee present at all interviews. In late 1982, after reaching a compromise similar to the March, 1982 agreement, Elsberry again insisted on having an employee present at all interviews.
 
 
 5
 In April, 1983 FLCRA was superseded by the Migrant and Seasonal Agricultural Worker Protection Act. 29 U.S.C., Secs. 1801-1872. DOL renewed its investigation under the MWPA. On June 14, 1983 Elsberry again refused DOL's request to interview migrant farmworkers.[2] On this visit Ray Holcombe, one of Elsberry's managers, was overheard to say to another Elsberry employee that he had "stifled" or "snookered" DOL's investigation for two-and-a-half years. DOL advised Elsberry that it would seek an injunction to allow the interviews. In May, 1984, after DOL had approved the request for seeking injunctive relief, investigators again attempted to conduct the interviews. Elsberry refused absent a warrant.
 
 
 6
 DOL filed an action for injunctive relief. After a five-day trial the district court granted DOL a temporary injunction. This appeal followed.
 
 
 7
 The MWPA authorizes DOL to enter onto fields to interview workers.
 
 
 8
 To carry out this chapter the Secretary, either pursuant to a complaint or otherwise, shall, as may be appropriate, investigate, and in connection therewith, enter and inspect such places (including housing and vehicles) and such records (and make transcriptions thereof), question such persons and gather such information to determine compliance with this chapter, or regulations prescribed under this chapter.
 
 
 9
 29 U.S.C. Sec. 1862(a). It is a violation of the MWPA to "unlawfully resist, oppose, impede, intimidate, or interfere with" a DOL official in the conduct of an investigation. 29 U.S.C. Sec. 1862(c) (emphasis supplied). The DOL may petition the district court to enjoin conduct that violates the MWPA. 29 U.S.C. Sec. 1852(a).
 
 
 10
 Elsberry argues that because its resistance to the DOL's entry onto its fields was not forcible, it did not amount to unlawful resistance, 29 U.S.C. Sec. 1862, and consequently was not a violation of the MWPA and, the argument concludes, was therefore not enjoinable. Thus, the parties lock horns in their briefs on the issue of whether non-forcible resistance falls within the purview of "unlawful[ ] resist[ance]." The record amply supports the district court's conclusion that Elsberry " 'snookered' the agency for several years" to delay the DOL's investigation. 663 F.Supp. at 366. However, in order to rise to the level of a violation of the MWPA, which may subject the offender to criminal penalties, 29 U.S.C. Sec. 1851, the resistance must be unlawful.
 
 
 11
 The regulations promulgated by the Secretary reiterate the language of Sec. 1862(c), but also include a reference to 18 U.S.C. Sec. 111. 29 C.F.R. Sec. 500.8. That section provides that it is unlawful to "forcibly assault[ ], resist[ ], oppose[ ], impede[ ], intimidate[ ], or interfere[ ] with" a federal employee in the performance of his duties. 18 U.S.C. Sec. 111 (emphasis supplied). This supports Elsberry's argument that the interference must be forcible before it can be unlawful. It is said that to hold otherwise would rend the term unlawful out of the statute and proscribe any resistance to the DOL investigation. In order for the resistance to be unlawful, and thus a violation of the MWPA, the resistance must be a violation of some law or the term unlawful must otherwise have some clear meaning itself. Congress and other administrative agencies have demonstrated that they are aware of the distinction between forcible resistance against a federal employee and simple refusal to permit a search. Compare 16 U.S.C. Sec. 1857(1)(D) (it is unlawful to refuse to permit an officer to board a vessel to conduct a regulatory search) with Sec. 1857(1)(E) (it is unlawful to forcibly assault, resist ...); compare 50 C.F.R. Sec. 611.7(a)(2) (same as 16 U.S.C. Sec. 1857(1)(D)) with 50 C.F.R. Sec. 611.7(a)(3) (same as 16 U.S.C. Sec. 1857(1)(E)).[3]
 
 
 12
 Without doubt Congress could have undertaken to make Elsberry's non-forcible refusal to allow DOL investigators onto its fields unlawful. Congress, however, only proscribed unlawful acts of resistance. An unlawful act is an "[a]ct contrary to law, and presupposes that there must be an existing law." H. Black, Black's Law Dictionary 1377 (5th ed. 1979). Therefore, we must look beyond 29 U.S.C. Sec. 1862(c) to determine whether Elsberry's conduct falls within the meaning of unlawful.
 
 
 13
 The statute cited in the regulations promulgated pursuant to the MWPA, 18 U.S.C. Sec. 111, prohibits forcible resistance to a federal officer in the performance of his duties. Elsberry's conduct, albeit perhaps deceptive, does not rise to the level of forcible resistance. See United States v. Cunningham, 509 F.2d 961, 963 (D.C.Cir.1975) (mere deception of a federal employee or mere refusal to permit him entry does not violate Sec. 111).
 
 
 14
 In another statute Congress has made it unlawful to "knowingly and willfully obstruct[ ], resist[ ], or oppose" a government official serving legal process. 18 U.S.C. Sec. 1501. "The gist of the offense of resisting" encompassed by Sec. 1501 requires some degree of physical force. United States v. McDonald, 26 F.Cas. 1074, 1077 (C.C.E.D.Wisc.1879) (No. 15,667).
 
 
 15
 The statute, however, does not limit the offense to resistance alone, it includes also willful acts of obstruction or opposition; and to obstruct is to interpose obstacles or impediments, to hinder, impede or in any manner interrupt or prevent, and this term does not necessarily imply the employment of direct force, or the exercise of direct means. It includes any passive, indirect or circuitous impediments to the service or execution of process; such as hindering or preventing an officer by not opening a door or removing an obstacle or concealing or removing property.
 
 
 16
 Id.
 
 
 17
 The Supreme Court has agreed that "threatened force is not always an indispensable ingredient in the offense of interfering with an officer in the discharge of his duties...." District of Columbia v. Little, 339 U.S. 1, 6, 70 S.Ct. 468, 471, 94 L.Ed. 599 (1950) (citing with approval annotation which included McDonald, id. at 6 n. 6, 70 S.Ct. at 471 n. 6). In Little the defendant refused to unlock her door for a health inspector absent a warrant, and was convicted of a misdemeanor for "interfering with or preventing any inspection authorized" by health regulations. Id. at 4 & n. 2, 70 S.Ct. at 470 & n. 2. The Supreme Court found it persuasive in reversing Little's conviction that the health regulations imposed no duty on the part of the home owner to assist in inspections and that the regulations did not prohibit refusing to permit any lawful inspection that had been imposed by other statutory schemes. Id. at 6, 70 S.Ct. at 470-71. Likewise, the MWPA does not impose a duty on the part of Elsberry to assist in the investigation, see 29 U.S.C. Sec. 1862(a) (giving DOL authority to enter but not imposing any corresponding duty on the farmer being inspected), and, as we have pointed out, see supra note 3 and accompanying text, other regulatory schemes have made it unlawful to refuse to permit inspections. Here it may be noted that Elsberry's course of conduct went well beyond the simple refusal of Little to unlock her door.
 
 
 18
 Some uncertainty is created by the use of "unlawfully" in Sec. 1862(c) because it is unclear whether Congress intended to prohibit only forcible obstruction, or also obstructive conduct that was knowing and willful but without physical force. The legislative history also is not altogether clear. At one hearing it appears from the record that Sec. 1862(c) was included in the MWPA because of physical confrontation that had previously occurred.
 
 
 19
 A new provision makes it unlawful to interfere with officials of the Department in the performance of their duties under the bill. This section has been added as a result of the increasing number of incidents involving threats of bodily harm to our compliance officers.
 
 
 20
 Migrant and Seasonal Agricultural Workers Protection Act: Hearing before the Subcomm. on Labor Standards of the House Comm. on Education and Labor, 97th Cong.2d Sess. 48 (1982) (statement of Collyer, Department of Labor Spokesman) reprinted in 128 Cong.Rec. S11749 (Sept. 17, 1982). Elsewhere the section is given more sweeping scope.
 
 
 21
 [Sec. 1862(c) ] makes it a violation of this Act for any person to interfere in any manner with an official during the performance of his investigation or law enforcement function under the Act.
 
 
 22
 H.R.Doc. No. 885, 97th Cong., 2d Sess. 33, reprinted in 1982 U.S.Code Cong. & Admin.News 4547, 4579.
 
 
 23
 However, even though Elsberry has not been subjected to either civil or criminal penalties for violating MWPA which are now subject to review, and indeed it is not necessary in present circumstances for us to determine whether Elsberry has violated MWPA, we are not freed from further consideration of the case.
 
 
 24
 The MWPA expressly authorizes DOL investigators to enter onto Elsberry's property to interview workers. 29 U.S.C. Sec. 1862(a). Merely because Elsberry may not have acted unlawfully in excluding the agents does not mean that the DOL is powerless to seek relief from the courts. See Marshall v. Barlow's, Inc., 436 U.S. 307, 317 & n. 12, 98 S.Ct. 1816, 1823 & n. 12, 56 L.Ed.2d 305 (1978) (government sought injunctive relief to permit OSHA inspection in face of non-forcible refusal).
 
 
 25
 Although DOL couched its complaint in terms of injunctive relief, practically speaking the DOL seeks as well a declaration that it may enter onto Elsberry's property, without previously obtaining a warrant, pursuant to Sec. 1862(a). This is a question that can be answered here without precise reference to whether Elsberry's conduct violates the MWPA.
 
 
 26
 Thus, in light of Elsberry's refusal to permit warrantless inspections, we hold that the district court properly considered the DOL request for warrantless entry as authorized by Sec. 1862(a). It was unnecessary for the DOL to await or precipitate a violation of the MWPA before it sought an order declaring its statutory authority to enter onto Elsberry's property. We therefore turn to Elsberry's argument that the MWPA is unconstitutional to the extent that it allows warrantless entry by DOL investigators onto their fields and labor camps to interview migrant workers.
 
 
 27
 Elsberry's fields are not open to the public. The fields being cultivated are fenced and the gates at the entrance to the fields are kept locked. The fences are of barbed wire or high tensile wire and are no more than chest high. "No Trespassing" signs are prominently posted about the perimeters of the fields.
 
 
 28
 Elsberry also provides housing for the migrant workers. The labor camps are located on private property and can be reached only by private drives. "No Trespassing" signs are posted at the entries to the private drives and Elsberry reserves the right to exclude persons from the labor camps. The migrant workers may invite visitors to the labor camp who are welcome provided they abide by camp rules. Elsberry concedes that a migrant worker could invite a DOL investigator as a visitor.
 
 
 29
 The fourth amendment's prohibition against unreasonable searches and seizures extends to commercial businesses. New York v. Burger, 482 U.S. 691, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987). While the operator of a business has a recognized expectation of privacy in his commercial property, that expectation is not as great as the similar expectation of privacy in one's home. Id. The Supreme Court has been reluctant to allow warrantless entry by government inspectors into a commercial building, Barlow's, Inc., 436 U.S. at 315, 98 S.Ct. at 1821-22, except when the industry is one that is closely regulated. New York v. Burger, 107 S.Ct. at 2642. The DOL did not seek injunctive relief to enter Elsberry's commercial buildings, however; it merely sought to enter onto agricultural fields or labor camps to interview migrant workers.[4]
 
 
 30
 The fourth amendment does not extend to sights seen in the open fields. Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924). Relying on Allinder v. Ohio, 808 F.2d 1180 (6th Cir.1987), Elsberry contends that the open field exception does not apply in this situation. In Allinder, the court found unconstitutional an Ohio regulatory statute which permitted the warrantless inspection of apiaries located on private property. Id. at 1182 & 1188. The fourth amendment protects the people from government intrusion into their "persons, houses, papers, and effects." U.S. Const. amend IV. The Allinder court found Ohio's statute unconstitutional because it permitted intrusion into effects (the apiaries) that necessarily had to be located in a field. Id. at 1186. Conversely, DOL seeks neither to intrude into a house nor an effect, but simply to enter onto a field. See United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 1141, 94 L.Ed.2d 326 (1987) ("an open field is neither a 'house' nor an 'effect' "). "An open field need be neither 'open' nor a 'field' as those terms are used in common speech." Oliver v. United States, 466 U.S. 170, 180 n. 11, 104 S.Ct. 1735, 1742 n. 11, 80 L.Ed.2d 214 (1984). Neither ordinary farm fences nor "No Trespassing" signs are sufficient to confer a reasonable expectation of privacy in activities taking place in otherwise open fields. Id. at 179, 182-83, 104 S.Ct. at 1741-42, 1743-44. This is equally true of property utilized in agricultural business. Dunn, 107 S.Ct. at 1140-41; Oliver, 466 U.S. at 179, 104 S.Ct. at 1741 ("There is no societal interest in protecting the privacy of those activities such as the cultivation of crops, that occur in open field.").[5]
 
 
 31
 The lines of caselaw extending fourth amendment protection to commercial property and stripping open fields of fourth amendment protection have developed separately and in different contexts. In this case, those two lines of authority collide. Ultimately, we conclude, impelled by Supreme Court precedent, that the nature of the activity taking place in the open field, be it commercial or otherwise, is insufficient to clothe an open field in fourth amendment protection.
 
 
 32
 We therefore find that under binding Supreme Court precedent no constitutional violation would occur by the entry of DOL investigators onto Elsberry's fields or the quasi-public[6] areas of the migrant labor camps. The MWPA does not offend the Constitution to the extent that it authorizes warrantless entry by DOL investigators onto open fields.
 
 
 33
 It is not impossible that the entry by government agents into fields may damage crops and disrupt the harvest. Here, no entry has been made and the record indicates that the DOL has worked hard to accommodate these concerns by attempting to schedule interviews with the laborers at times and places convenient to Elsberry. We do not decide, therefore, what relief, if any, may be available to Elsberry should government agents by their conduct damage crops or delay the harvest.
 
 
 34
 We AFFIRM the district court's order to the extent it declares the DOL has the authority, granted by the MWPA, to make a warrantless entry onto Elsberry's fields and labor camps for the purpose of conducting confidential interviews with the migrant workers. Further, although Elsberry's future conduct, if any, in resisting warrantless entry may be unlawful or indeed criminal, we believe that injunctive relief based upon alleged MWPA violations is inappropriate at this time and direct the district court to vacate its order of injunctive relief and enter an order for declaratory relief consistent with this opinion. The portion of the district court's opinion ordering the production of records is VACATED.[7] See supra note 4.
 
 
 
 [1]
 Secretary McLaughlin, who succeeded William Brock as Secretary of Labor after this appeal was filed, has been substituted as appellee. See Fed.R.App.P. 43(c)
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [2]
 Elsberry contends that the district court's findings of fact were clearly erroneous because it did not find that Elsberry demanded a warrant on this visit. We find this point irrelevant to our analysis. We have carefully reviewed the record, however, and it does reveal that Elsberry demanded a warrant before DOL investigators would be allowed to interview workers on the buses used to transport them. None of the witnesses testified with any certainty that a warrant was otherwise demanded at that time
 
 
 [3]
 This distinction is continued throughout Chapter VI of Title 50 of the Code of Federal Regulations. See, e.g., 50 C.F.R. Secs. 638.5(g) & (h); 640.7(a)(14) & (15), 641.7(a)(13) & (14), 642.7(a)(8) & (9)
 
 
 [4]
 The district court's order also compelled Elsberry to produce records which must be kept pursuant to the MWPA. Elsberry had cooperated with the DOL in the past in making these records available for inspection. Accordingly, that portion of the MWPA was not challenged by Elsberry, and we vacate that portion of the district court's order. We do not decide whether the DOL could obtain these records, absent permission from Elsberry, without a subpoena. See Brock v. Emerson Electric Co., 834 F.2d 994, 997 (11th Cir.1987) (requiring subpoena before an employer can be compelled to produce documents kept pursuant to OSHA); Donovan v. Mehlenbacher, 652 F.2d 228, 231 (2d Cir.1981). See contra McLaughlin v. A.B. Chance Co., 842 F.2d 724, 728 (4th Cir.1988) (documents may be obtained without a warrant during inspection pursuant to an employee health or safety complaint)
 
 
 [5]
 A case similar to the present one is Commonwealth v. Lutz, 512 Pa. 192, 516 A.2d 339 (1986), vacated, 480 U.S. 927, 107 S.Ct. 1560, 94 L.Ed.2d 754 (1987). In Lutz, state environmental protection agents attempted to conduct a warrantless search of private business property in response to an anonymous tip that solid waste was being disposed of on the property. The property owner refused the agents entry and was cited for a violation of the Pennsylvania Solid Waste Management Act which authorizes warrantless searches. See Pa.Stat.Ann. Secs. 6018.608(3) (authorizing warrantless searches) & 6018.610(10) (making it unlawful to refuse, hinder, obstruct, delay or threaten an agent performing an inspection). The Pennsylvania Supreme Court concluded that outdoor business areas were not open fields and that a warrantless search was therefore impermissible under the fourth amendment. 512 Pa. at 205-07, 516 A.2d at 346. The United States Supreme Court vacated the Pennsylvania decision and remanded for further consideration in light of Dunn, 107 S.Ct. 1134. The Pennsylvania Supreme Court vacated its prior decision. Commonwealth v. Lutz, 517 Pa. 481, 538 A.2d 872 (1988). Accordingly, we find that the business nature of Elsberry's fields and labor camps is of little moment to the open fields analysis
 
 
 [6]
 By quasi-public we refer to the common areas of the labor camps. The labor camps are located on private property and are not public in the same sense as are neighborhoods in a town or city. Serious constitutional ramification may be posed, however, if Elsberry seeks to bar persons from visiting the labor camps based on the message that visitor brings. See Marsh v. Alabama, 326 U.S. 501, 506, 66 S.Ct. 276, 278, 90 L.Ed. 265 (1946) ("The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it."). However, just as in Dunn the Court found that the police could approach the threshold of the locked barn gate, Dunn, 107 S.Ct. at 1141, we conclude that the DOL investigators may enter on the common areas of the labor camps. We emphasize that the laborers are entitled to fourth amendment protection of their residences
 
 
 [7]
 Other issues raised on appeal have been considered by us. Their decision is not critical to our decision and we forego discussion