Commonwealth of Pennsylvania, Department of Environmental Resources, Petitioner *v.* William Fiore, d/b/a Municipal and Industrial Disposal Company, Inc., Respondent.

Argued November 15, 1984, before Francis A. Barry, Senior Judge.

*Howard J. Wein,* Assistant Counsel, with him, *Barbara H. Brandon* and *James D. Morris,* Assistant Counsels, for petitioner.

*Robert P. Ging, Jr.,* with him, *Harold Condelman,* for respondent.

Opinion by Judge Barry, December 7, 1984:

This matter comes before the Court upon application by the Department of Environmental Resources (DER) for a preliminary injunction to enjoin William Fiore, d/b/a Municipal and Industrial Disposal Company (Fiore), from refusing access to his property to DER employees who are seeking to conduct inspections and collect effluent and ground water samples. This Court's jurisdiction is invoked pursuant to Sec-

tion 761(a)(2) of the Judicial Code, *as amended,* 42 P.S. §761(a)(2); Section 601 of the Clean Streams Law of Pennsylvania, Act of June 27, 1937, No. 394, P.L. 1987, *as amended,* 35 P.S. §691.601; and Section 604 of the Pennsylvania Solid Waste Management Act, Act of July 7, 1980, P.L. 380, No. 97, 35 P.S. §6018.604.

These same parties previously appeared before this Court on DER's request for enforcement of a consent order and a request for a contempt citation against Fiore. It was at that time established that Fiore owns and operates various solid waste disposal facilities in Elizabeth Township, Allegheny County, Pennsylvania.

At this first proceeding DER claimed Fiore entered into a consent order and agreement where he basically agreed to undertake a number of clean up operations in order to make his facility comply with the applicable requirements of the Solid Waste Management Act. DER alleged that Fiore had failed to comply with this agreement. This Court found that Fiore had voluntarily entered into a valid agreement and, on October 28, 1983, it issued a court order which found Fiore in civil contempt for violating various sections of the agreement and ordered, *inter alia,* immediate compliance with all of the provisions set forth in the agreement. This order is presently on appeal to the Supreme Court. No supersedeas has been granted.

The application for preliminary injunction which is now before this Court was filed by DER at the same docket number as the initial action just discussed. The facts which give rise to this action are not in dispute. On October 31, 1984, DER employees attempted to gain access to Fiore's property in order to conduct an inspection. Fiore admits that he refused them access to his property because they did not have a

search warrant. DER is seeking an injunction which would essentially give its employees access to Fiore's property "on a continuing basis".

Fiore has filed a Motion to Dismiss where he argues that this Court has been divested of jurisdiction by the appeal to the Supreme Court. Pa. R.A.P. 1701(a). DER, on the other hand, submits that this Court has jurisdiction based on Pa. R.A.P. 1701(b)(1) which provides:

(b) Authority of a trial court or agency after appeal. After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:

(1) Take such action as may be necessary to preserve the status quo, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in forma pauperis, grant supersedeas, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

It is DER's contention that this present action is ancillary to the original action which was decided by this Court on October 28, 1983. We agree.

An ancillary proceeding is defined in Black's Law Dictionary 79 (5th ed. 1979) as "[o]ne growing out of or auxiliary to another action or suit, or which is subordinate to or in aid of a primary action, either at law or in equity." DER is seeking this injunction so that it may inspect the property in question in order to determine, *inter alia,* whether Fiore is complying with this Court's order of October 28, 1983. It is in this respect that this second action is ancillary to the initial contempt action and, therefore, is property before this Court.

The other legal question raised by this case is one of first impression in this Commonwealth. This Court must determine whether §608 of the Solid Waste Management Act and §5(b)(8) of the Clean Streams Law grant to DER and its employees the authority to conduct warrantless inspections of Fiore's property. If these provisions do authorize warrantless inspections then this Court must decide whether these inspections violate the Fourth Amendment of the United States Constitution and Article I Section 8 of the Pennsylvania Constitution.

Section 608 of the Solid Waste Management Act provides:

The department and its agents and employees shall:

(1) Have access to, and require the production of, books and papers, documents, and physical evidence pertinent to any matter under investigation.

(2) Require any person or municipality engaged in the storage, transportation, processing, treatment or disposal of any solid waste to establish and maintain such records and make such reports and furnish such information as the department may prescribe.

(3) Enter any building, property, premises or place where solid waste is generated, stored, processed, treated or disposed of for the purposes of making such investigation or inspection as may be necessary to ascertain the compliance or noncompliance by any person or municipality with the provisions of this act and the rules or regulations promulgated hereunder. In connection with such inspection or investigation, samples may be taken of any solid, semisolid, liquid or contained gaseous material for analysis. If

any analysis is made of such samples, a copy of the results of the analysis shall be furnished within five business days to the person having apparent authority over the building, property, premises or place.

35 P.S. §6018.608.

Section 5(b)(8) of the Clean Streams Law states:

(b) The department shall have the power and its duty shall be to:

(8) Make such inspections of public or private property as are necessary to determine compliance with the provisions of this act, and the rules, regulations, orders or permits issued hereunder.

35 P.S. §691.5(b)(8).

DER relies exclusively on these two provisions to argue that it is entitled to conduct warrantless inspections and collect effluent and ground samples from Fiore's property. Although these provisions do not expressly authorize warrantless searches, it is reasonable to assume that they were intended to have exactly that effect. To construe them otherwise would render them meaningless, particularly in view of the fact that DER's right to enter Fiore's premises upon obtaining a valid search warrant is not dependent upon either of the provisions in question.

The question then becomes whether this grant of power is violative of the Fourth Amendment and in a recent decision, the United States Supreme Court outlined the factors which must be considered in determining the constitutionality of legislation of this nature. At issue in *Donovan v. Dewey,* 452 U.S. 594, (1981), was a provision of the Federal Mine Safety and Health Act of 1977 which expressly authorizes warrantless inspections of underground and surface mines. DER relies on this case to argue that the pro-

visions in question are constitutionally sound. Although it is true that the Supreme Court in *Donovan* ultimately held that the warrantless searches conducted pursuant to the Federal Mine Safety and Health Act are reasonable within the meaning of the Fourth Amendment, it is that Court's careful reasoning which inevitably leads this Court to the conclusion that the statute in the case at hand lacks most of the necessary qualities which would make it constitutionally sound.

It is a well established rule of law that the Fourth Amendment protections against unreasonable searches extend to administrative inspections of commercial property. *See v. City of Seatle*, 387 U.S. 541 (1967). The reasonableness of a warrantless inspection scheme must be determined on a case-by-case basis. *United States v. Raiyo Maru No. 53*, 699 F.2d 989 (9th Cir. 1983). In addition to *Donovan*, the Supreme Court has found warrantless inspection schemes valid in *United States v. Biswell*, 406 U.S. 311 (1973) (interstate sale of firearms) and *Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970) (liquor industry). In these cases the United States Supreme Court recognized that the legislation "provided a sufficiently comprehensive and predictable inspection scheme". *Donovan*, 452 U.S. at 600.

DER places great emphasis on the fact that the United States Supreme Court has stated in these cases that certain industries are so pervasively regulated that a person entering such business cannot have a reasonable expectation of privacy. DER, in fact, seems to argue that because Fiore is engaged in the highly regulated hazardous waste industry, he cannot have any expectation of privacy and, therefore, must accept warrantless searches. While the expectation of privacy is certainly an important factor in deter-

mining the reasonableness of a search, DER ignores another very important consideration. In *Donovan* the Supreme Court stressed the fact that the law which grants authority to conduct warrantless inspections must also necessarily provide a predictable scheme of inspection which will be sufficiently certain and regular so that it will provide an adequate substitute for a warrant. It is because this type of comprehensive scheme was lacking in the Occupational Safety and Health Act (OSHA) provisions that the Supreme Court found that statutory authorization of warrantless inspections unconstitutional. *Marshall v. Barlow's, Inc.,* 436 U.S. 307 (1978).

The OSHA provision involved in the *Marshall* case is similar to the provisions at issue in this case. It simply granted government officials authority to enter any factory or work site for purposes of inspection or investigation. The Supreme Court found this statute unconstitutional because, *inter alia,* it delegated "almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search". *Marshall,* 436 U.S. at 323.

The provisions before this Court are just as broad. They simply authorize DER employees to enter and inspect premises in order to ascertain compliance. Unlike the provision approved in *Donovan,* these do not attempt to set up an inspection scheme which could arguably be a substitute for a warrant. The act in *Donovan* specifically defines the frequency of inspections; it provides for follow-up inspection in cases where violations have been dicovered; it specifically sets forth the purpose of each inspection; and, finally, it prohibits forcible entries, thereby providing a mechanism for accommodating any special privacy concerns which might arise.

Because none of these elements are present in the provisions currently before this Court, it must be held that any warrantless search conducted pursuant to their authority is unreasonable and, therefore, unconstitutional. Consequently, DER has no legal right to enter Fiore's premises without first obtaining a search warrant.

Based on the foregoing, DER's request for a preliminary injunction is denied.

### ORDER

Now, December 7, 1984, petitioner's request for a preliminary injunction is hereby denied.