566 A.2d 845

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Appellee,**

v.

**BLOSENSKI DISPOSAL SERVICE, Appellant.**

Supreme Court of Pennsylvania.

Argued April 13, 1989.

Decided Nov. 16, 1989.

James A. Cunningham, Pottstown, for appellant.

Kenneth A. Gelburd, Sp. Deputy Atty. General, Dept. of Environmental Resources, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

In this case we are again called upon to examine the constitutionality of the warrantless inspection provisions of Section 608 of the Solid Waste Management Act, 35 P.S. § 6018.608 (Supp.1985). For the reasons set forth below, we find these provisions to be constitutionally valid and hence affirm the judgment of the Commonwealth Court.

The facts are as follows: On August 19, 1982, a Department of Environmental Resources (DER) employee, Mr. Frank Holmes, while on a public highway, observed one of Appellant's loaded trash trucks enter a property and then back into a concrete building. This building or "transfer station" was used to compact waste so that it could be loaded onto a tractor-trailer for transportation and ultimate disposal. Mr. Holmes was aware of the purpose of this building, as he had visited it previously and knew that Appellant had not been issued a permit to operate it as a transfer station pursuant to Section 201 of the Solid Waste Management Act, 35 P.S. § 6018.201 (Supp.1987). When Mr. Holmes lost sight of the truck as it entered the building, he exited his car, walked onto the property and into the "transfer station" building, without a warrant, to view the operation.[1] The trash truck was not empty and a load of

---

1. Mr. Holmes' authority for entering this building without a warrant was Section 608(3) of the Solid Waste Management Act, 35 Pa.C.S. § 6018.608(3), which provides in relevant part:

 *Production of materials, recordkeeping requirements; rights of entry*
 The department and its agents and employees shall: ...
 (3) Enter any building, property, premises or place where solid waste is generated, stored, processed, treated or disposed of neces-

solid waste was in the compacting machinery. Thereafter, DER initiated a prosecution against Appellant under the Solid Waste Management Act for operating a transfer station without a permit.

Initially, Appellant was convicted of a summary offense by a district justice. Appellant then filed a *de novo* appeal to the Court of Common Pleas of Chester County. On the date set for trial, Appellant filed a motion to suppress the testimony of Mr. Holmes on the basis that his testimony would be grounded on information obtained without a search warrant. The trial court allowed his testimony, reasoning that there could be no reasonable expectation of privacy under the Fourth Amendment to the United States Constitution, or Article I, Section 8 of the Pennsylvania Constitution, due to the highly regulated nature of the waste disposal industry. After a non-jury trial, Appellant was found guilty and filed an appeal with the Commonwealth Court before sentence was imposed. The Commonwealth Court initially remanded to the trial court for sentencing. Appellant then filed a motion for reconsideration in light of *Commonwealth v. Fiore*, 88 Pa.Commonwealth Ct. 418, 491 A.2d 284 (1984) (since reversed at 512 Pa. 327, 516 A.2d 704 (1986)). The trial court reversed its original decision and held that the Commonwealth Court decision in *Fiore, supra*, required suppression of the evidence. DER appealed the trial court decision to the Commonwealth Court and, on appeal, the Commonwealth Court reversed the order of the trial court and remanded for imposition of sentence. 110 Pa.Cmwlth. 194, 532 A.2d 497. Appellant has now appealed to this Court.

sary to ascertain the compliance or noncompliance by any person or municipality with the provisions of this act and the rules and regulations promulgated hereunder. In connection with such inspection or investigation, samples may be taken of any solid, semi-solid, liquid or contained gaseous material for analysis. If any analysis is made of such samples, a copy of the results of the analysis shall be furnished within five business days to the person having apparent authority over the building, property, premises or place.

In their opinion in the instant case, the Commonwealth Court briefly mentions *Fiore, supra,* and *Commonwealth v. Lutz,* 512 Pa. 192, 516 A.2d 339 (1986),[2] but bases the disposition of the matter on neither. Instead, the Commonwealth Court relies on the "good faith" exception to the Fourth Amendment enunciated in *Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987).

In *Krull,* a Chicago detective relied upon a warrantless administrative search provision in conducting an investigation. The very next day the warrantless search portion of the statute was held unconstitutional. The United States Supreme Court held that the evidence should not have been suppressed due to the officer's good faith reliance upon the statute. This same rationale was applied to the matter at hand by the Commonwealth Court. It was their belief that no greater protection is afforded Appellant under Article I, Section 8 of the Pennsylvania Constitution.[3]

The issue presented in this appeal is whether our holding in *Lutz, supra,* requires suppression of the evidence obtained when the DER inspector entered private property, not visible from the public road, and searched an enclosed area without first obtaining a search warrant. Implicit in this question is the following corollary issue: while a good faith exception to the Fourth Amendment exclusionary rule has been established by the U.S. Supreme Court in *Illinois v. Krull, supra,* must we afford Appellant greater protection under Article I, Section 8 of the Pennsylvania Constitution than he would now receive under the Fourth Amendment of the United States Constitution. If we agreed that

2. Judgment vacated by the U.S. Supreme Court at 480 U.S. 927, 107 S.Ct. 1560, 94 L.Ed.2d 754 (1987) and remanded to this Court to reconsider in light of *U.S. v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). We, in turn, remanded to the trial court at 517 Pa. 481, 538 A.2d 872 (1988).

3. Article I, Section 8, "Security from searches and seizures," provides: The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or thing shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

*Lutz* controls our disposition of this matter, the evidence derived from the warrantless search would be deemed illegal and subject to possible suppression. If subject to suppression, the issue whether there is a good faith exception to the exclusionary rule under our State Constitution would then arise. We do not reach that issue, however, because we have concluded that *Lutz* is not controlling precedent and that, in any event, it was wrongly decided.

In *Commonwealth v. Lutz*, 512 Pa. 192, 516 A.2d 339 (1986), in the Opinion Announcing the Judgment of the Court, Mr. Justice Hutchinson stated:

the warrantless inspection provision of the [Solid Waste Management] Act, in the current absence of a regulation defining the circumstances under which such inspections of non-hazardous waste will be conducted, violates the Fourth Amendment of the United States Constitution. We also believe that the open fields doctrine developed under the Fourth Amendment, does not apply in this case.

*Id.* at 195, 516 A.2d at 340.

On March 24, 1987, the United States Supreme Court vacated the judgment in *Lutz, supra,* and remanded for reconsideration in view of *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). We further remanded the case to the trial court for said reconsideration. *Commonwealth v. Lutz*, 517 Pa. 481, 538 A.2d 872 (1988).

*Dunn* did not involve a statutory warrantless search of a business by an administrative officer. It centered around an incident in which law enforcement officials entered the ranch of a suspected drug dealer/manufacturer. There, officers crossed several fences, detected the odor of an acid used in manufacturing illegal drugs, and heard the sound of a motor running as they approached a barn. The officers peered into this barn with the aid of a flashlight and observed what appeared to be a drug laboratory. Two similar visits were made, a search warrant was finally obtained, and the officers confiscated chemicals and equipment from the barn and ranch house.

The United States Supreme Court held that (1) the barn and the area around it lay outside the protected curtilage of the suspect's ranch house, so that the warrantless observation of the barn and surrounding area did not constitute a search of the curtilage in violation of the Fourth Amendment, where (a) the barn was located a substantial distance away from the ranch house, (b) the barn did not lie within the area that was enclosed by a fence which surrounded the ranch house, (c) the officers possessed objective data which indicated that the barn was not being used for intimate activities of the home, and (d) the suspect did little to protect the barn area from observation by those standing in the open fields; and (2) even assuming that the suspect had an expectation of privacy in the barn which was independent of the curtilage doctrine, the Fourth Amendment was not violated, where the officers never entered the barn or any other structure on the premises, and merely stood, outside the curtilage of the house and in the *open fields* upon which the barn was constructed, and peered into the barn's open front.

 Appellant contends that the "open fields" doctrine, as elaborated by the United States Supreme Court in *Dunn,* is not applicable in this case because here (unlike *Dunn*), Agent Holmes was *inside* the "transfer station" building when he viewed the alleged illegal activity. Brief for Appellant, at pp. 12–13. We agree.

Mr. Justice Hutchinson's Opinion Announcing the Judgment of the Court in *Lutz, supra,* was joined by only two other Justices. It is not *stare decisis* or binding precedent. Moreover, that judgment has now been vacated by the United States Supreme Court. This writer joined in Mr. Justice Larsen's dissenting opinion in *Lutz, supra,* and we are now convinced upon argument and reflection that it accurately states the law under the Fourth Amendment of the United States Constitution. The balance of this opinion borrows freely from that dissent.

■ We think that the warrantless inspection provisions of the Solid Waste Management Act, 35 P.S. § 6018.608 (Supp.1985), are clearly valid under the *"Colonnade–Biswell* exception"[4] to the warrant requirement of the Fourth Amendment, as that exception was explained by the United States Supreme Court in *Donovan v. Dewey*, 452 U.S. 594, 601, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262 (1981).

In *Donovan v. Dewey, supra,* the United States Supreme Court stated:

[U]nlike searches of private homes, which generally must be conducted pursuant to a warrant in order to be reasonable under the Fourth Amendment, legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment.... The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections....

The interest of the owner of commercial property is not one in being free from any inspections. Congress has broad authority to regulate commercial enterprises engaged in or affecting interstate commerce, and an inspection program may in some cases be a necessary component of federal regulation.

\* \* \* \* \* \*

These decisions make clear that a warrant may not be constitutionally required when Congress has reasonably determined that warrantless searches are necessary to further a regulatory scheme *and* the federal *regulatory presence is sufficiently comprehensive and defined that*

---

**4.** *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), upholds the validity of warrantless inspections of businesses in the alcoholic beverage industry; *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), upholds the validity of warrantless inspections authorized by the Gun Control Act.

> *the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.*

452 U.S. at 598–99, 601, 101 S.Ct. at 2538–39 (citations omitted; emphasis added).

The plurality in *Lutz, supra,* appeared to hold that the warrantless inspections authorized by the Act were *almost* valid under the balancing test enunciated by *Dewey,* and *would be valid if* the authorization were limited to warrantless inspection of "hazardous waste" facilities and operations as opposed to "ordinary solid waste" facilities and operations. The plurality concluded that three of *Dewey's* four "requirements" for validating warrantless inspections were satisfied by the Act. Those were, first, that the business operator is on notice that he is engaged in activity which may subject him to warrantless searches; second, that the regulation of the industry is pervasive and regular, considering the history of the regulatory scheme as a factor in this determination; third, that there is a strong governmental interest in the search.... The fourth requirement, that there be "reasonable legislative or administrative standards" governing the inspection was not met, according to the plurality where "ordinary solid waste" was involved because:

> ordinary solid waste does not pose the same danger to public health as hazardous waste. Since the public interest is less vitally affected and the industry itself has fewer of the special characteristics that would put an operator on notice of random regulatory searches, we believe that warrantless searches for ordinary solid waste cannot withstand constitutional scrutiny absent proper adoption by the Department of a flexible inspection schedule or a reasonable definition of the circumstances under which such searches will be conducted.

516 A.2d at 345.

This attempt to draw a distinction between the Solid Waste Management Act and the *"Colonnade–Biswell"* exception cases where "ordinary solid waste" is involved does

not withstand close analysis. Simply put, our legislature has determined that the risk to the public health, safety and welfare, and to the environment, posed by "improper and inadequate solid waste practices," *both* hazardous and non-hazardous, necessitates the warrantless inspection procedures authorized by the statute. The plurality in *Lutz* stated:

> While we recognize an important public interest in controlling non-hazardous waste, it does not rise to the same level of concern as hazardous waste.

516 A.2d at 345.

But this is not right. It is not for this Court to determine the "level of concern" for the problems and risks posed by "non-hazardous" waste, for the appropriate level of concern has been established by the legislature. There is a strong and fundamental presumption that the legislature has acted within constitutional bounds. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 58–60, 454 A.2d 937, 959 (1983) *cert. denied* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

Moreover, in considering the constitutionality of the Solid Waste Management Act, we must also bear in mind that it was enacted to implement the will of the people as expressed in Article I, Section 27 of the Pennsylvania Constitution which provides:

> *Natural resources and the public estate*
>
> The people have a right to clear air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people. Adopted May 18, 1971.

See Section 102(10) of the Act, 35 P.S. § 6018.102(10) ("it is the purpose of this act to ... implement Article I, Section 27 of the Pennsylvania Constitution....") Viewed in that light, it is apparent that the legislature is *very concerned* about the problems and risks posed by both hazardous and

non-hazardous ("ordinary") waste disposal and has subjected the disposal of *all forms of solid waste* to heavy regulation. The strong presumption of constitutionality that accompanies environmental legislation in this Commonwealth requires that we give great deference to the General Assembly's assessment of the dangers and risks posed by "improper and inadequate solid waste practices" regarding *all* forms of solid waste. Section 102 of the Act states:

> The Legislature hereby determines, declares and finds that, since improper and inadequate solid waste practices create public health hazards, environmental pollution, and economic loss, and cause irreparable harm to the public health, safety and welfare, it is the purpose of this act to: (1) establish and maintain a cooperative State and local program of planning and technical and financial assistance for comprehensive *solid waste management;* (2) encourage the development of resource recovery as a means of managing *solid waste,* conserving resources, and supplying energy; (3) require permits for the operation of municipal and residual waste processing and disposal systems, licenses for the transportation of hazardous waste and permits for hazardous waste storage, treatment and disposal; (4) protect the public health, safety and welfare from the short and long term dangers of transportation, processing, treatment, storage, and disposal of *all wastes;* (5) provide a flexible and effective means to implement and enforce the provisions of this act. . . .

35 P.S. § 6018.102 (emphasis added).

While hazardous waste is subject to perhaps *more* stringent regulation, 35 P.S. §§ 6018.401–6018.405 (Article IV) so-called "ordinary solid waste" is subject to extensive and pervasive regulation as well. 35 P.S. §§ 6018.201–6018.203 (Article II. Municipal Waste) and §§ 6018.301–6018.303 (Article III. Residual Waste). Thus, as for "non-hazardous" or "ordinary" waste just as with "hazardous" waste, *the legislature has determined that:*

The risks these substances pose to the public, coupled with the commercial operator's knowledge of those risks, justify warrantless searches of sites where they are kept. The nature of the business and its narrow definition justify the search as indicated when *Dewey* is compared to [*Marshall v. Barlow's, Inc.*, 436 U.S. 307 [98 S.Ct. 1816, 56 L.Ed.2d 305] (1978)]. In short, such searches are a reasonable means of ameliorating the great risk these materials pose to the general public.

516 A.2d at 345 (in reference to risks of hazardous waste only).

In *Barlow's*, the United States Supreme Court invalidated warrantless searches permitted under OSHA because the OSHA statute allowed searches of all worksites engaged in interstate commerce. The instant case involves searches of only a single business engaged in the disposal of solid wastes and is thereby clearly distinguishable from *Barlow's*. Indeed, we think, as noted above, that this case is substantially like *Colonnade* and *Biswell* in that only a single business or industry is involved; it is heavily regulated; and that any one engaged in this business activity should be aware that because of the vital public and statutory interest society now recognizes that it has in proper solid waste disposal from an environmental protection standpoint, that unannounced inspections (as authorized by Section 608 of the Solid Waste Management Act) can be anticipated. Moreover, no different result can be required under the language of Article I, Section 8 of the Pennsylvania Constitution.

For the reasons set forth above, the judgment of the Commonwealth Court in the instant case must be, and the same is hereby, affirmed.

NIX, C.J., and ZAPPALA, J., file dissenting opinions.

NIX, Chief Justice, dissenting.

The majority, in its zeal to incorporate the good faith exception that has been engrafted upon the Fourth Amend-

ment of the United States Constitution, *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), to Article I, section 8 of our Constitution [1] ignores the legislative intent clearly evident in the legislation presently before the Court. By focusing upon the asserted "vital public ... interest society now recognizes that it has in proper solid waste disposal ..." (at 850), the majority has successfully diverted this Court from discharging its primary responsibility which is first to ascertain the true legislative intent before passing upon its constitutionality. I do not intend the diminution of the environmental concerns involved. My concern remains as it was in *Commonwealth v. Lutz*, 512 Pa. 192, 208, 516 A.2d 339, 347 (1986) (Nix, C.J., Concurring), that the legislative intent was being ignored.

Section 6018.608(3) (Supp.1985) [2] is followed by section 6018.609 which provides for the obtaining of warrants. The majority attempts to frame the issue as if subsection 608(3) provides for warrantless searches. Such a reading unnecessarily creates a constitutional confrontation where the succeeding section provides the means for securing a search warrant where required by constitutional mandate.[3] As I

[1]. Searches and Seizures. The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, not without probable cause, supported by oath or affirmation subscribed to by the affiant. Pa. Const. Art I, § 8.

[2]. 35 P.S. § 6018.608(3) provides:
The department and its agents and employees shall:
. . . .
Enter any building, property, premises or place where solid waste is generated, stored, processed, treated or disposed of for the purposes of making such investigation or inspection as may be necessary to ascertain the compliance or noncompliance by any person or municipality with the provisions of this act and the rules or regulations promulgated hereunder. In connection with such inspection or investigation, samples may be taken of any solid, semisolid, liquid or contained gaseous material for analysis. If any analysis is made of such samples, a copy of the results of the analysis shall be furnished within five business days to the person having apparent authority over the building, property, premises or place.

[3]. 35 P.S. § 6018.609. Search Warrants

stated in *Commonwealth v. Lutz, supra,* "... nowhere in those sections is there an express grant of a warrantless right of entry." *Id.* at 208, 516 A.2d at 347.

The discussion of a "good faith approach" in this context is clearly unwarranted. This is not a case of an honest mistaken reliance, *United States v. Leon, supra,* or one in which the officer had reason to believe he could make a warrantless search. *Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). Here the officer acted under a statute that expressly provided for a warrant and made no effort to secure one, and there were no exigent circumstances to justify his actions.

This is clearly an illegal search which cannot be condoned.

I dissent.

ZAPPALA, Justice, dissenting.

I disagree with the result reached by the majority today, and write separately to express my disagreement with the unnecessary abandonment of the holding in *Commonwealth v. Lutz,* 512 Pa. 192, 516 A.2d 339 (1986).

I cannot agree that, without more, this Court can reach the conclusion that the risk involved with hazardous waste is as great as that incurred with solid waste. While it could never be concluded that solid waste is benign in all cases when compared with the hazardous variety, it seems clear to me that the facts which would make it so would also provide the probable cause necessary to obtain a search

An agent or employee of the department may apply for a search warrant to any Commonwealth official authorized to issue a search warrant for the purposes of inspecting or examining any property, building, premise, place, book, record or other physical evidence, of conducting tests, or of taking samples of any solid waste. Such warrant shall be issued upon probable cause. It shall be sufficient probable cause to show any of the following:

(1) that the inspection, examination, test, or sampling is pursuant to a general administrative plan to determine compliance with this act;

(2) that the agent or employee has reason to believe that a violation of this act has occurred or may occur; or

(3) that the agent or employee has been refused access to the property, building, premise, place, book, record or physical evidence, or has been prevented from conducting tests or taking samples.

warrant. In the present case, nothing pointing to the imminence of the danger of the appellant's activity warrant this Court's excise, in one fell swoop, of a business' expectation of privacy.

In this aspect, I think that *Lutz* struck the proper balance between risk of harm versus the derogation of a business' constitutionally protected rights. This Court need go no further than that to decide the present case. From the mere fact that the Legislature has expressed the same general concerns for solid waste as it has hazardous, does not come the conclusion that the two are para materia, and thus should not be treated as such.

In instances such as the present, we should scrutinize with great caution the facts of each case before we concede in a general way the rights held by our citizens and our businesses.

I therefore dissent.