574 A.2d 697

COMMONWEALTH of Pennsylvania

v.

**Robert BUCKMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 30, 1989.

Filed May 10, 1990.

454

Heywood E. Becker, New Hope, for appellant.

David W. Zellis, Asst. Dist. Atty., Doylestown, for Com., appellee.

Before CIRILLO, President Judge, and BROSKY and BECK, JJ.

BECK, Judge:

This case presents a significant question concerning the power of state inspectors to conduct warrantless searches of goods for sale in commercial establishments throughout Pennsylvania.

The relevant facts are not in dispute. Robert Buckman is the owner and operator of Buckman's Garden Works, a lawn and garden supply center located in Doylestown. On May 22, 1986, two deputy sealers employed by the Bucks County Department of Weights and Measures entered Buckman's store during normal business hours and asked to open two bags of pine bark mulch selected at random from his inventory. The agents planned to cut open the sealed packages of mulch and dump their contents into a measuring box in order to ascertain whether the weights and measurements listed on the packages were accurate. The Department of Weights and Measures had not received any complaints concerning the products sold at Buckman's Garden Works, and the agents had no reason to believe that Buckman had ever sold falsely labeled merchandise. The proposed inspection was part of an ongoing program of random spot checks of items offered for sale conducted by the Department on a year round basis.

Buckman objected to the inspection on the grounds that it would destroy the sealed packages and would ruin the

products for retail sales purposes. He told the agents that if they opened the packages, he would charge them for the mulch. Instead of buying the mulch, the agents summoned their supervisor. After speaking with the supervisor, Buckman again refused to consent to a warrantless search of the packages. He repeatedly insisted that the agents purchase the packages before measuring their contents. The agents and supervisor departed from the store without conducting a search.

██ Buckman was cited for committing the following offense:

Any person who shall hinder or obstruct in any way the Attorney General, the director or any one of the inspectors or a sealer or a deputy sealer in the performance of his official duties shall upon conviction thereof, in a summary proceeding be punished by a fine of not less than twenty dollars ($20) or more than two hundred dollars ($200), or by imprisonment for not more than three months, or by both such fine and imprisonment.

Pa.Stat.Ann. tit. 73, § 1684 (Purdon Supp.1989).[1] He was tried by a district justice, convicted, and fined twenty dollars. He appealed to the Court of Common Pleas of Bucks County where, following a trial de novo, he was again convicted and the twenty dollar fine was reimposed. Following the denial of post-trial motions, he filed a timely notice of appeal with this court.[2]

1. An inspector's official duty to conduct searches to ensure proper labeling of goods for sale derives from sections 12, 15, and 16 of the Weights and Measures Act of 1965. Pa.Stat.Ann. tit. 73 §§ 1662, 1665, 1666 (discussed *infra*).

2. The instant appeal should not have been filed in the Superior Court. The Weights and Measures Act of 1965 is a regulatory statute administered by the Bureau of Weights and Measures at the direction of the Attorney General. See *E.L.G. Enterprises Corp. v. Gulf Oil Co.*, 291 Pa.Super. 414, 435 A.2d 1295 (1981). Commonwealth Court has jurisdiction over appeals from criminal prosecutions administered by Commonwealth agencies. 42 Pa.Cons.Stat.Ann. § 762(a)(2) (Purdon 1981). However, appellee's failure to file a timely objection to the filing of this appeal has perfected the jurisdiction of this court. Pa.R.App.P. 741.

## I.

The fourth amendment to the Constitution of the United States provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.

Appellant contends that warrantless nonconsensual inspections of consumer goods by agents of the Weights and Measures Department are unreasonable searches prohibited by the fourth amendment.[3] We must decide at the outset if this issue is properly before us.

Appellant prevented the state inspectors from opening his mulch bags. No search or seizure of any personal property was actually conducted. We must therefore determine whether appellant has standing to raise a fourth amendment challenge to his conviction. We find that appellant has standing to litigate the fourth amendment issue. Appellant was convicted and fined for refusing to allow a warrantless search of his business. If the search that the inspectors planned to undertake would have complied with fourth amendment standards, appellant's conviction was proper. On the other hand, if the proposed search would have violated appellant's fourth amendment rights, appellant cannot be penalized for failing to comply with the inspectors' demands.

In *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the United States Supreme Court addressed a constitutional challenge that arose in a similar procedural posture. Norman See owned a commercial warehouse in Seattle, Washington. A representative of the Seattle Fire Department attempted to conduct a warrantless inspection

3. Appellant also argues that the effect of warrantless inspections is to render goods unsaleable, and that therefore such inspections constitute a taking without just compensation in violation of the fifth amendment. Since we find that appellant's fourth amendment claim is meritorious, we need not address his fifth amendment claim.

of the warehouse pursuant to the city fire code. See refused to permit the fire inspector to enter the warehouse *and no search took place.* See was convicted of the summary offense of failing to comply with an order of the fire chief, and was subjected to a suspended fine of $100. On appeal, the United States Supreme Court found that the municipal ordinance providing for warrantless searches of business property was inconsistent with the fourth amendment. The Court further reasoned that "appellant may not be prosecuted for exercising his constitutional right to insist that the fire inspector obtain a warrant authorizing entry upon appellant's locked warehouse." 387 U.S. at 546, 87 S.Ct. at 1741. Accordingly, the Court reversed See's conviction.

■ *See v. Seattle* illustrates that a defendant may mount a successful constitutional attack on an inspection program even if no actual search or seizure of his business property was accomplished. *Cf. Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (fourth amendment bars prosecution of tenant for refusing to allow warrantless inspection of apartment building that was authorized by municipal housing code); *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (fourth amendment bars enforcement of federal statute compelling manager to submit to warrantless inspection of business involved in interstate commerce). Citizens may not be forced to endure the Hobson's Choice of opening their private property to illegal warrantless searches or facing the prospect of imprisonment. At least where a state inspector seeks to perform an unconstitutional search, where the inspector has not obtained a warrant or prior court order sanctioning the search, and where the owner of the premises does no more than offer non-violent resistance to the invasion of his property, the fourth amendment confers immunity from prosecution for hindering the duties of the inspector.

■ In light of these considerations, we hold that appellant has standing to question the constitutionality of war-

rantless inventory searches by agents of the Department of Weights and Measures. Under Pennsylvania law, a party asserting standing must ordinarily have a direct, immediate, and substantial interest in the subject matter of the litigation. *See Franklin Township v. Dep't of Envtl. Resources*, 500 Pa. 1, 452 A.2d 718 (1982). Appellant has a direct, immediate, and substantial interest in litigating the constitutionality of inventory searches since a finding that such searches are unconstitutional would afford a complete defense to the criminal offense of which he was convicted and for which he was fined. Moreover, appellant was personally aggrieved by the prosecution and conviction for hindering the duties of the inspector. Appellant seeks to vindicate his personal right to oppose in a peaceful manner an unlawful search of his own property; appellant is not attempting to invoke the constitutional rights of any third party. Therefore, we must reach the merits of appellant's fourth amendment claim.[4]

## II.

Appellant calls into question the constitutionality of certain provisions of the Weights and Measures Act of 1965. The Act provides the statutory basis for searches by inspectors of weights and measures. Section 1662 of the Act, as codified, states in relevant part:

**4.** The issue of whether a party has standing to assert a fourth amendment claim usually arises in cases where a defendant seeks to suppress evidence on the grounds that the evidence was the fruit of an unreasonable search. In such cases, the question of whether the defendant has standing to raise a fourth amendment challenge merges with the question of whether the search violated a legitimate expectation of privacy on the part of the defendant. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). We emphasize that the instant case does not present any suppression issue. Moreover, we need not determine whether a defendant who wishes to raise a fourth amendment defense to a prosecution for refusing to consent to a search must have a legitimate expectation of privacy in the area that he prevented the state inspectors from searching. Assuming arguendo that such a requirement exists, we note that appellant has a legitimate expectation of privacy in the mulch bags that the agents of the Department of Weights and Measures sought to inspect for the reasons specified in Section III of this opinion.

The Attorney General shall from time to time, weigh or measure and inspect packages or amounts of commodities kept, offered or exposed for sale, sold or in the process of delivery, to determine whether the same contain the amounts represented and whether they be kept, offered or exposed for sale or sold in accordance with law. . . .

Pa.Stat.Ann. tit. 73 § 1662.

Section 1665 provides:

(a) With respect to the enforcement of this act and any other acts dealing with weights and measures that he is or may be empowered to enforce, the Attorney General may seize for use as evidence without formal warrant, incorrect or unsealed weights and measures or amounts or packages of commodities found, prior to seizure, to be used, retained, offered or exposed for sale or sold in violation of the law.

(b) In the performance of his official duties, the Attorney General is authorized to enter and go into or upon without formal warrant, any structure or premises and to stop any person whatsoever and to require him to proceed with or without any vehicle of which he may be in charge to the nearest available testing apparatus tested and approved by the Attorney General, a city or a county.

*Id.* at § 1665. Section 1666 further provides that the powers and duties imposed upon the Attorney General are also imposed upon inspectors acting under the Attorney General's directions.[5]

Read as a whole, these provisions appear to grant inspectors broad authority to conduct warrantless searches of store inventories. Appellant does not dispute that the agents of the Department of Weights and Measures acted in furtherance of this statutory scheme when they attempted to open packages at Buckman's Garden Works. All statutory schemes, however, are subject to certain overriding constitutional limitations. We must determine

---

5. The legislature has transferred the Attorney General's powers and duties under the Act to the Secretary of Agriculture. Pa.Stat.Ann. tit. 71 § 755-3 (Purdon Supp.1989).

whether the proposed search of the mulch bags was consistent with the fourth amendment.

It is now well established that fourth amendment protection against unreasonable searches and seizures extends to private commercial property. *New York v. Burger,* 482 U.S. 691, 699, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987). Indeed, one impetus for the passage of the fourth amendment was the bitter experience of colonial merchants whose products were frequently inspected by agents of the Crown to ensure payment of taxes imposed by the British Parliament. *See Marshall v. Barlow's, Inc.,* 436 U.S. at 311–12, 98 S.Ct. at 1819–20. The United States Supreme Court has held that administrative inspections of businesses may not ordinarily be carried out without first obtaining a warrant or the consent of the owner. *See v. Seattle, supra.* However, the Court has recognized a limited exception to the warrant requirement in the case of certain industries that are subject to extensive regulation. *See Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). The Commonwealth argues that searches by agents of the Department of Weights and Measures fall within the *Colonnade–Biswell* exception to the warrant requirement.

■ The *Colonnade–Biswell* doctrine validates certain warrantless administrative searches that are authorized by statute or duly promulgated regulation. *See generally Commonwealth v. Black,* 365 Pa.Super. 502, 530 A.2d 423 (1987). In order for the doctrine to apply, there must be an initial determination that the business establishment that is the target of the search is part of a closely regulated industry. *See Burger,* 482 U.S. at 703–707, 107 S.Ct. at 2644–46; *Barlow's,* 436 U.S. at 313, 98 S.Ct. at 1820. Moreover:

> ... warrantless inspection ... even in the context of a pervasively regulated business, will be deemed to be reasonable only so long as three criteria are met. First, there must be a "substantial" government interest that

informs the regulatory scheme pursuant to which the inspection is made.... Second, the warrantless inspections must be "necessary to further [the] regulatory scheme." ... Finally, ... the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

*Burger*, 482 U.S. at 702–03, 107 S.Ct. at 2643–44 (citations omitted).

In this case, we must focus on the threshold question of whether Buckman's Garden Works is part of a closely regulated industry. It has been said that an industry is closely regulated if the "regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections for specific purposes." *Burger*, 482 U.S. at 705 n. 16, 107 S.Ct. at at 2645 n. 16 (citing *Donovan v. Dewey*, 452 U.S. 594, 600, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262 (1981)). Although this general definition is open to varying interpretations, a review of precedent provides further guidance.

In *Colonnade, supra,* the United States Supreme Court upheld a statute that authorized warrantless searches of the business premises of liquor licensees. In doing so, the Court noted that the sale of alcohol has been subject to an exceptional degree of close government supervision throughout the history of our nation. *Id.,* 397 U.S. at 75–76, 90 S.Ct. at 776. In *Biswell, supra,* the Court sanctioned warrantless searches of gun dealers conducted pursuant to a federal gun control law. The Court observed that facilities dealing in sporting weapons are federally licensed, and that by accepting a license, a dealer is put on notice that "his business records, firearms, and ammunition will be subject to effective inspection." *Id.,* 406 U.S. at 316, 92 S.Ct. at 1596. *Dewey, supra,* approved warrantless searches of the mining industry conducted pursuant to the

Federal Mine, Safety and Health Act of 1977. In this context, the Court stressed that mining is among the most dangerous of all occupations, and that the Act established a comprehensive scheme for the regulation of mines that limited the discretion of federal inspectors. *Burger, supra,* upheld a New York statute authorizing warrantless searches of automobile junkyards. The Court found that junkyards specializing in the dismantling of vehicles are closely regulated by the state of New York; this conclusion was based in large part on the fact that operators of such establishments are required to obtain a license from the state and comply with detailed record keeping requirements.

On the other hand, not every commercial enterprise that is subject to government inspection by statute qualifies as pervasively regulated. In *Barlow's, supra,* a federal safety inspector attempted to search an electrical and plumbing installation business. The inspector relied on section 8(a) of the Occupational and Safety Health Act of 1970 (the OSHA Act) which granted agents of the Secretary of Labor the right to enter the work areas of establishments engaged in interstate commerce. The manager denied the inspector entry and challenged the Act on fourth amendment grounds. On appeal, the Court rejected the Secretary of Labor's argument that by passing the Act, the government had exposed all businesses engaged in interstate commerce to close regulation. Writing for the majority, Justice White stated that: "The clear import of our cases is that the closely regulated industry of the type involved in *Colonnade* and *Biswell* is the exception. The Secretary would make it the rule." 436 U.S. at 313, 98 S.Ct. at 1821. Justice White further noted that "[only] the most fictional sense of voluntary consent to later searches [can] be found in the single fact that one conducts a business affecting interstate commerce; under current practice and law, few businesses can be conducted without having some effect on interstate commerce." *Id.,* 436 U.S. at 314, 98 S.Ct. at 1821.

Accordingly, the Court declared section 8 of the Act unconstitutional.

Recently, the Pennsylvania Supreme Court applied the federal case law concerning regulated industries in *Department of Environmental Resources v. Blosenski Disposal Service*, 523 Pa. 274, 566 A.2d 845 (1989). In that case, the Court rebuffed a challenge to warrantless inspections of waste disposal facilities authorized by the Solid Waste Management Act.[6] The Court found that these facilities are subject to "extensive and pervasive regulation...." *Id.* at 284, 566 A.2d at 850. In support of this conclusion, the Court cited provisions of the Act that require, *inter alia*, that all persons who engage in the processing, storage or treatment of waste obtain permits from the state and comply with state regulations. Pa.Stat.Ann. tit. 35 §§ 6018.201–6018.405. The Court also emphasized the public health risk posed by waste materials. Finally, the Court was careful to distinguish *Barlow's:*

> In *Barlow's*, the United States Supreme Court invalidated warrantless searches permitted under OSHA because the OSHA statute allowed searches of all worksites engaged in interstate commerce. The instant case involves searches of only a single business engaged in the disposal of solid wastes and is therefore clearly distinguishable from *Barlow's*. Indeed, we think, as noted above, that this case is like *Colonnade* and *Biswell* in that only a single business or industry is involved and that any one engaged in the business activity should be aware that because of the vital public and statutory interest society now recognizes in proper solid waste disposal from an environmental standpoint, that unan-

6. *See* Pa.Stat.Ann. tit. 35 § 6018.608 (Purdon Supp.1989). In *Commonwealth v. Lutz*, 512 Pa. 192, 516 A.2d 339 (1986), a plurality of the Court had concluded that although warrantless inspections of hazardous waste sites were permissible, warrantless inspections of non-hazardous waste sites were unconstitutional. The *Blosenski* Court disapproved *Lutz* insofar as *Lutz* invalidated searches of sites handling ordinary solid waste.

nounced inspections (as authorized by Section 608 of the Solid Waste Management Act) can be anticipated.

*Blosenski*, 523 Pa. at 285, 566 A.2d at 850.

■ Against the backdrop of these prior cases, we must assess the constitutionality of the warrantless inspection of stores specializing in the retail sale of lawn and garden supplies. We find that these stores are not part of any closely regulated industry. Such establishments lack the distinguishing characteristics of businesses that previously have been recognized as pervasively regulated. Unlike sales of alcoholic beverages, sales of garden supplies have not been the focus of a long history of close government supervision. Nor does the state require that a businessman obtain a license or permit before he may sell bags of mulch and similar products. Moreover, the Commonwealth has not come forward with evidence that the garden supply trade is especially dangerous or poses a significant threat to public health and safety. Thus, a person opening a garden shop might easily be unaware that his commercial property would be subject to warrantless searches and seizures.

The Commonwealth attempts to invoke the *Colonnade–Biswell* doctrine on the sole ground that garden shops are covered by the warrantless search provisions of the Weights and Measures Act of 1965. This argument might have merit if the Weights and Measures Act were a detailed and comprehensive legislative scheme designed to regulate a narrowly defined sector of the economy. *See Dewey, supra* (upholding federal Mine, Safety and Health Act of 1977). Such is not the case. The Act is not directed exclusively at any particular category of products. Instead, the Act grants state agents general authority to "go into or upon, without formal warrant, any structure or premises" and inspect "commodities, kept, offered or exposed for sale, sold or in the process of delivery . . . ." Pa.Stat.Ann. tit. 73 §§ 1662, 1665. The word commodity encompasses "[a]nything—goods, wares, merchandise, compound mixture or preparation, products of manufacture or any tangible personal property—which may be lawfully kept, sold or offered

for sale." Pa.Stat.Ann. tit. 73 § 1652. This broad language would apparently cover every manufacturing, wholesaling, and retailing enterprise in Pennsylvania.

The search and seizure provisions of the Weights and Measures Act are reminiscent of the section of the OSHA Act that the United States Supreme Court invalidated in *Barlow's*. The OSHA Act permitted searches of all businesses engaged in interstate commerce. The Weights and Measures Act permits searches of all businesses that sell commodities. These statutes share the same infirmity—rather than regulate a single industry, they abolish the warrant requirement as to a vast number of industries that engage in ordinary commercial activities. To paraphrase Justice White's opinion in *Barlow's*, only the most fictional sense of voluntary consent to searches can be found in the fact that one conducts a business that in some way involves the sale of tangible personal property. If we were to endorse the warrantless inspection of all such businesses, the *Colonnade–Biswell exception* to the warrant requirement for searches of commercial property would come perilously close to swallowing the general rule.

The Weights and Measures Act of 1965 sweeps within its reach many businesses that cannot reasonably be characterized as closely regulated. Insofar as sections 1662 and 1665 of the Act authorize warrantless searches of businesses that are not the subject of close regulation, we hold that these provisions are invalid. We need not reach the question of whether every warrantless inspection undertaken pursuant to the Act would violate the fourth amendment. It might be argued, for example, that an inspector may verify the weights and measures listed on a bottle of alcohol without obtaining a warrant since the alcoholic beverage industry is in fact pervasively regulated in this Commonwealth. *See Commonwealth v. Black*, 365 Pa.Super. 502, 530 A.2d 423 (1987). However, we are constrained to find that at least as applied to the warrantless inspection of goods for sale in lawn and garden supply centers, sections 1662 and 1665 are clearly unconstitutional.

We reach this conclusion with full awareness of the strong presumption that the legislature has acted within constitutional bounds. *See Blosenski,* 523 Pa. at 282–283, 566 A.2d at 849. This presumption is not irrebuttable. In an appropriate case, a court must undertake a careful and sensitive review of legislation in order to ensure that the constitutional rights of the people have not been infringed. Moreover, in addressing a constitutional challenge to a statute, it is often useful to consider the statute in historical context. In 1959, in the case of *Frank v. Maryland,* 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), the United States Supreme Court limited the warrant requirement to traditional police searches for evidence of crime. At the time the legislature passed the Weights and Measures Act of 1965, *Frank* was the law of the land.[7] In 1967, the United States Supreme Court overruled *Frank* and held that the fourth amendment generally prohibits warrantless administrative inspections of commercial structures. *Camara,* 387 U.S. 523, 87 S.Ct. 1727; *See,* 387 U.S. 541, 87 S.Ct. 1737. Viewed in this light, it is hardly surprising that the Weights and Measures Act of 1965 poses constitutional problems. The 1965 Pennsylvania General Assembly cannot be faulted for failing to foresee the constitutional developments of the past twenty-five years. Yet, we must apply the law as it has evolved.

We therefore conclude that agents of the Department of Weights and Measures do not have carte blanche to enter businesses and open sealed packages without a warrant and without the consent of an owner. By so concluding, we do not deny the importance of the services provided by the Department. The improper labeling of goods is a fraud upon the public that may go undetected in the absence of an effective inspection program. Yet, it is difficult to argue that a blanket exemption from the warrant requirement is

7. Sections 1662 and 1665 were part of the original public law enacted in 1965. 1965, Dec. 1, P.L. 988, §§ 12, 15. The only subsequent change in the text of these provisions was a 1968 amendment transferring inspection powers from the Secretary of the Interior to the Attorney General. 1968, Dec. 18, P.L. 1247, No. 396 § 1.

necessary in order for the Department to fulfill its function. In the vast majority of cases, it is likely that businessmen will freely consent to inspections in order to foster public confidence in their wares. In those few cases where consent is denied, the inspector may attempt to secure a search warrant.[8] Although obtaining a search warrant would involve a short delay, a businessman would have difficulty disposing of a large inventory of falsely labeled goods on short notice. *Alternatively, an inspector could simply buy a product prior to measuring its weight and volume.* In the instant case, the Department's decision to bring criminal charges against the appellant rather than purchase two bags of mulch did nothing to advance the goal of consumer protection.

The appellant was within his rights when he refused to permit a warrantless search of his goods. Therefore, he cannot be convicted and fined for interfering with an inspection.

### III.

In affirming appellant's conviction, the Court of Common Pleas relied on the Weights and Measures Act of 1965. For the above stated reasons, the Act does not justify a warrantless search of appellant's garden shop. The trial court also suggested an alternative basis for dismissing appellant's fourth amendment challenge. The court reasoned that appellant "cannot claim a right to privacy in goods publicly displayed in an establishment where the public is invited to come, inspect, and buy during regular business hours." Trial Court Op. at 4–5. We do not agree.

8. We note that in cases involving health and safety inspections, the United States Supreme Court has stated that a warrant may be issued upon a lesser standard than the probable cause required for police searches for evidence of crime. Health and safety inspectors, and perhaps other categories of inspectors, may obtain warrants upon a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]." *Barlow's,* 436 U.S. at 320, 98 S.Ct. at 1824 (citing *Camara,* 387 U.S. at 538, 87 S.Ct. at 1736).

■ It is true that a businessman does not possess a reasonable expectation of privacy in commercial premises to the extent that he knowingly exposes the premises to the general public. *See* 2 W. LaFave, *Search and Seizure* § 2.4(b) (2d ed. 1987) (collecting cases). State inspectors, like any other members of the public, are free to enter retail stores during normal business hours and observe merchandise on display. This does not mean that a businessman waives his privacy interest in the *interior* of a sealed container by placing it on the shelf. Only the outside packaging of the container is within plain view of customers. The businessman does not relinquish his privacy interest in the contents of the package until the package is sold.

On this point, the United States Supreme Court's unanimous decision in *Lo–Ji Sales v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979), is instructive. In that case, an investigator for the New York State Police appeared before a Town Justice and sought to obtain a warrant to search an adult bookstore. The Town Justice not only issued the warrant, but also accompanied the police to the bookstore and actively took part in the search. At the time the search party arrived, the bookstore was open for business. The police removed plastic and cellophane covers from publications so that the Town Justice could view their contents and determine if they were obscene. The police also directed a clerk who worked at the bookstore to adjust coin-operated projectors so that the Town Justice could view films on the projectors without depositing any money. Numerous items were seized and obscenity convictions were obtained.

On appeal, the Court first concluded that the Town Justice had departed from his proper role as a neutral and detached judicial officer and that therefore the warrant for the search of the bookstore was invalid. The Court then proceeded to address the State's alternative theory for upholding the convictions. Chief Justice Burger, writing for the Court, explained:

The suggestion is that by virtue of its display of the items at issue to the general public in areas of its store open to them, petitioner had no legitimate expectation of privacy against government intrusion, *see Rakas v. Illinois*, 439 U.S. 128, 58 L.Ed.2d 387, 99 S.Ct. 421 (1978), and that accordingly no warrant was needed. But there is no basis for the notion that because a retail store invites the public to enter, it consents to wholesale searches and seizures that do not conform to Fourth Amendment guarantees. *See Lewis v. United States*, 385 U.S. 206, 211, 17 L.Ed.2d 312, 87 S.Ct. 424 [427] (1966). The Town Justice viewed the films, not as a customer, but without the payment a member of the public would be required to make. Similarly, in examining the books and in the manner of viewing the containers in which the films were packaged for sale, he was not seeing them as a customer would ordinarily see them.

442 U.S. at 329, 99 S.Ct. at 2326.

The instant case is analogous. The agents of the Department of Weights and Measures were not content with seeing appellant's mulch bags in the manner in which a customer would ordinarily see them. The agents insisted on examining the contents of the bags without making the payment a member of the public would be required to make. As against this intrusion, appellant maintained a reasonable expectation of privacy in his goods. Therefore, appellant may not be convicted for refusing to allow the warrantless search.

Judgment of sentence is vacated. Jurisdiction is relinquished.