601 A.2d 864

**Barbara FORSYTHE, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 11, 1991.

Decided Jan. 2, 1992.

344

Barbara Forsythe, pro se.

John R. White, for appellee.

Before COLINS and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Barbara Forsythe (Appellant) appeals the January 2, 1991 order of the Court of Common Pleas of Adams County (trial court), wherein the trial court overruled Appellant's post-verdict motions and directed her to appear for sentencing on January 23, 1991.[1] We affirm.

1. The trial court's January 23, 1991 sentencing order reads as follows:
     AND NOW, January 23, 1991, the Sentence of the Court is that the Defendant pay a fine in the sum of $300 and the costs of this proceeding.
     Since the Court has viewed this matter more in the nature of an attempt to abate a nuisance than a criminal prosecution, the further order of the Court is that if the Defendant files a proper application

The background of this case is as follows. After various discussions with Appellant about the condition of her property and contents thereon, Mr. Larry Smith, Franklin Township's (Township) code enforcement officer, sent Appellant an application for a junkyard license and a copy of the Township's Junk Dealer and Junkyard Ordinance (Ordinance) on October 15, 1987. Between January 4, 1988 and December 1, 1988, Mr. Smith periodically inspected Appellant's premises. On those occasions, he observed numerous junked cars, piles of trash, washers, mailboxes, wheel rims, water heaters, concrete blocks and miscellaneous car parts on her property.

Although Appellant paid a junkyard application fee of two hundred dollars on July 1, 1989, she neglected to submit an application or take measures to bring her property into compliance with the Ordinance. The Township finally sent Appellant a detailed violations letter on May 1, 1989.

Due to Appellant's continued inaction with regard to the violations letter, the Township filed summary criminal charges against her on September 8, 1989. After a March 5, 1990 hearing on the charges, a district justice found her guilty of violating the Ordinance. Appellant then appealed her conviction to the trial court.

After a *de novo* hearing on July 24, 1990, the trial court found Appellant to be in violation of the Ordinance because she was maintaining a junkyard without a license. Accordingly, Appellant filed post-verdict motions on August 15, 1990, wherein she argued that the trial court erred for the following reasons:

 a. The trial court considered evidence which the Township obtained in violation of her constitutional right against an unlawful search and seizure;

for a junk yard license within 15 days from today's date and proof of that is filed with the Clerk of Courts, and brings her property within compliance with provisions of the ordinance within 45 days, the fine will automatically [be] reduce[d] to $100.

b. The trial court refused to rule that her payment of two hundred dollars constituted a renewal of a prior license;

c. The trial court did not permit her to question Mr. Smith about junkyard licensees located in the township;

d. The trial court classified her "recycling yard" as a junkyard; and

e. The trial court should have concluded that the Ordinance was illegal.

The trial court denied her post-verdict motions, in part, due to the open field exception to the Fourth Amendment warrant requirement. In *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), the United States Supreme Court held that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to open fields.[2]" *Id.* (footnote added).

The trial court concluded that the open field exception applied on the basis of Mr. Smith's testimony and photographs admitted at the hearing, which revealed the presence of ten junked cars as viewed from a public road. Specifically, it found that "[t]he condition of [Appellant's] land was easily ascertainable from a public road. She could have no reasonable expectation of privacy in an open field." *Commonwealth of Pennsylvania v. Barbara E. Forsythe*

2. In *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), the Supreme Court held that:

open fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter[,] these lands usually are accessible to the public and the police in ways that a home, an office or commercial structure would not be. It is not generally true that fences or no trespassing signs effectively bar the public from viewing open fields in rural areas.

. . . .

An open field need be neither 'open' nor a 'field' as those terms are used in common speech. For example, ... a thickly wooded area nonetheless may be an open field as that term is used in construing the Fourth Amendment.

*Id.* at 179–180 n. 11, 104 S.Ct. at 1741–1742 n. 11.

(*Forsythe*) (No. CC–306–90, filed January 2, 1991), slip op. at 2.

As further rationale for its denial, the trial court noted that the commercial exception to the warrant requirement applied here. That exception provides as follows:

[T]here must be an initial determination that the business establishment that is the target of the search is part of a closely regulated industry....

... It has been said that an industry is closely regulated if the 'regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections for specific purposes.'

*Commonwealth v. Buckman*, 393 Pa.Superior Ct. 453, 461–62, 574 A.2d 697, 702 (1990). Additionally, the party asserting the commercial property exception has the burden of proof. *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

Specifically, the trial court found that Appellant's property was commercial in nature because she alleged that she was operating a "recycling center" on her property and admitted that she had a business sign with the designation "Jay's Auto Parts" erected at the entrance thereto. Notwithstanding the trial court's statement that the commercial exception applied in this case, however, it relied on the open field exception in determining that Appellant had violated the Township's Ordinance.

Significantly, the trial court acknowledged the possibility that Mr. Smith's inspection may have been overbroad, even for an arguably commercial property, by striking his "testimony concerning the contents of the mobile home or trailer." *Forsythe* at 2. The Court stated that "[w]hile a decrepit mobile home may be evidence of a junkyard, we hardly think the contents thereof can be." *Id.* Thus, the trial court seemed to recognize that Appellant may have had an expectation of privacy inside of the trailer. Accordingly, since the trial court relied on the open field exception,

we need not delve into the applicability of the commercial property exception under this specific fact pattern.

The applicable sections of the Ordinance are set forth below:

*Section 3.* DEFINITIONS

(b) "Junk", scrap, copper, brass, rope, rags, batteries, paper, trash, rubber debris, waste, iron, steel and other old or scrap ferrous or non-ferrous material, including wrecked, scrapped, ruined, dismantled or *junked motor vehicles or parts thereof,* but not including farm machinery provided said farm machinery is used in connection with a bona fide farm operation.

. . . .

(d) "Junk Yard", any outdoor establishment, or place of business or activity which is maintained, used or operated for storing, keeping, buying or selling junk; for the maintenance or operation of a garbage dump, sanitary landfill or scrap metal processor or for the storage of ten or more junked vehicles.

. . . .

*Section 4.* LICENSE

*No person shall* engage or *continue to engage in business as a junk dealer* or establish or operate a junk yard in the Township except as authorized by the Ordinance and *without first having obtained a license* therefor from the Board. The license shall be issued for a term of one year beginning January 1, and ending December 31 [of] the same year, and shall be renewed annually on or before the first day of January of each year. Such license shall state the name of the person to whom the license is issued and the location of the junk yard premises used or intended to be used, and shall be posted conspicuously upon such premises.

. . . .

*Section 11.* INSPECTIONS

Every junk yard premises maintained or *proposed to be maintained* within the Township shall be subject to inspection during reasonable hours of the day by any member of the Board or a duly authorized agent thereof, who shall be and hereby is authorized to make regular inspections of the junk yard premises of every licensee or *proposed licensee* hereunder for the purpose of determining whether said licensee has maintained and operated or *will maintain and operate* his premises in full compliance with the provisions of this Ordinance and such further regulations as may hereafter be adopted by the Township regulating and licensing junk dealers and the establishment and maintenance of junk yards. The Board or its duly authorized agent shall forthwith prosecute any discovered violation of this Ordinance.

. . . .

*Section 15.* REPEAL

All Ordinances or parts of Ordinances heretofore enacted, or intended so to be, in conflict herewith shall be and the same are hereby repealed. PROVIDED, HOWEVER: That a junk dealer actively operating a junk yard on the effective date of this Ordinance [August 6, 1986] shall be permitted to operate under the terms of the pre-existing Franklin Township Junk Yard Ordinance, which is intended to be superseded by this Ordinance, through *February 1, 1987.*

Sections 3(b) and (d), 4, 11 and 15 of the Ordinance (emphasis added).

The issue before us is whether the trial court erred in finding that Appellant violated the Ordinance. As we noted above, Appellant set forth five arguments as to why the trial court erred in finding her in violation. We will address each argument.

■ Appellant's first argument is that the trial court erred in considering evidence obtained in violation of her right against an unlawful search and seizure because Mr. Smith came on her property without a search warrant.

Since the trial court took the action of striking the testimony with regard to the contents of the mobile home, however, any potential violation of her Fourth Amendment rights due to the absence of a search warrant is vitiated.

■ Further, since the trial court found Mr. Smith's testimony with regard to the items in open view to be credible, there was a sufficient basis for its finding that Appellant was in violation of the Ordinance. Because of the open field exception, the trial court did not have to take into consideration the items found while Mr. Smith was actually on Appellant's property in order to find her in violation of the Ordinance.

Lastly, Mr. Smith sent Appellant a copy of the applicable sections of the Ordinance prior to citing her for violation of the same. Since Appellant admitted to having received and reviewed the Ordinance, she was put on notice as to what items constituted "junk" under Section 3(b). As the following testimony illustrates, Appellant admitted to the presence of various items on her property, many of which were in open view:

Q. Let's talk about that [Appellant's claim that the items on her property are not junk]. You have what, over a hundred junk vehicles on your property; is that correct?

A. No. They are salvage vehicles. They are not junk.

Q. They are salvage vehicles?

A. Yes.

Q. They are not currently licensed or inspected?

A. No, they are salvage.

Q. They are not in running condition?

A. Yes, a lot of them are.

Q. Some of them are wrecked?

A. Yes.

Q. Some of them are partially dismantled?

A. What else would you have in a salvage yard?

Q. So you're using salvage rather than junk?

A. It's salvage.

Q. You also have some washers and mailboxes and wheel rims and water heaters, and concrete blocks and miscellaneous used auto parts lying around your premises too, don't you?

A. They are in my recycling yard, yes.

Q. You have a pretty substantial quantity of all those items plus other things; is that right?

A. How could you have a recycling yard if you didn't have any articles to recycle.

N.T., July 24, 1990 Hearing, pp. 37–38.

■ Appellant secondly argues that the trial court erred in finding that she was in violation of the Ordinance because it did not consider her undisputed payment of two hundred dollars to constitute a renewal of her 1980 license to operate a junkyard. We note that Mr. Smith sent Appellant a copy of the applicable sections of the Ordinance. Pursuant to Section 4, the Township clearly mandates that one may not continue to engage in the junkyard business without first obtaining a license from the Township's Board of Supervisors (Board). Further, that section provides that a junkyard operator shall renew his or her license on an annual basis. Thus, Appellant was put on notice that, in order to continue her operation, she first had to obtain a license from the Board.

■ Additionally, even if Appellant thought that by paying the two hundred dollars she was renewing her 1980 license, which is her contention, Section 15 of the Ordinance should have put her on notice that she could rely on the terms of the prior Ordinance only until February 1, 1987. Significantly, the trial court found the testimony of Mr. Smith, that he advised Appellant to apply for a license and even sent her the forms to do so, to be credible. Thus, even if Appellant was confused by the repeal section of the Ordinance, Section 15, the trial court seemed to place great weight on Mr. Smith's attempts to assist her in complying with the Ordinance. For these reasons, we find Appellant's second argument to be without merit.

■ Thirdly, Appellant argues that the trial court erred in not permitting her to question Mr. Smith with regard to other junkyard licensees in the Township. The relevant portion of hearing transcript reads as follows:

Q. Could you tell me why there's only two people in the township with a license?

MR. WHITE: I am going to object to that question as being irrelevant.

THE COURT: Why are you asking this question, Miss Forsythe?

THE DEFENDANT: To show that my place isn't the only place that's not in compliance with the ordinance.

THE COURT: That's not really relevant.[3] The objection is sustained.

N.T. at 25 (footnote added).

Absent an abuse of discretion which resulted in actual prejudice,[4] we will not disturb the trial court's decision to exclude evidence with regard to junkyard licensees located within the Township. We find no such abuse here because, even if the trial court had permitted Appellant to question Mr. Smith with regard to the potential noncompliance of junkyard licensees, that testimony would not have gone to the facts which were necessary to establish Appellant's violation of the Ordinance. In all likelihood, the excluded testimony would have tended to show selective enforcement of the Ordinance. Since it does not appear that actual prejudice resulted from the trial court's exclusion, we conclude that Appellant's third argument is without merit.

■ Appellant's fourth argument as to why the trial court erred in finding that she was in violation of the Ordinance is that her premises constituted a "recycling yard," not a junkyard. In its opinion, the trial court made

3. Evidence has probative value and is relevant if it helps to establish facts at issue or tends to advance the inquiry. *In re Kirkander*, 326 Pa.Superior Ct. 380, 474 A.2d 290 (1984).

4. *Council of Plymouth Township v. Montgomery County,* 109 Pa.Commonwealth Ct. 616, 531 A.2d 1158 (1987).

the following observations, which we find to be dispositive of Appellant's argument:

> Defendant cannot avoid the ordinance's application by calling her site a recycling center. See *Babin v. City of Lancaster,* 89 Pa.Cmwlth. 527, 493 A.2d 141 (1985).[5] A junkyard is a junkyard is a junkyard.

*Forsythe* at 4 (footnote added).

■ Appellant's fifth and final argument is that the trial court erred in finding her in violation of the Ordinance because it is illegal. We note that a township's power "to regulate and license junkyards must bear a substantial relationship to the health, safety and general welfare of the public and does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property." *Orwell Township Supervisors v. Jewett,* 132 Pa.Commonwealth Ct. 30, 33, 571 A.2d 1100, 1102 (1990), citing *Medinger Appeal,* 377 Pa. 217, 104 A.2d 118 (1954).

Here, the trial court acknowledged the Township's power to regulate junkyards through the use of ordinances. Significantly, the trial court also recognized the limitations on that power and, accordingly, ruled to exclude from consideration the items found as a result of Mr. Smith's potentially overly intrusive inspection of the interior of a mobile home. We agree with the trial court that "Franklin Township's substantial interest in regulating junkyards is beyond question,"[6] and that the Township did not improperly intermeddle with Appellant's private ownership of her property by taking note of the items in her "open field." Thus, we find Appellant's last argument to be without merit.

For the foregoing reasons, we affirm.

AND NOW, this 2nd day of January, 1992, the order of the Court of Common Pleas of Adams County in the above-captioned matter is hereby affirmed.

---

5. In *Babin,* the court held that even though defendants called themselves a health club, that self-designation was not binding since it was really a sexually-oriented massage parlor.

6. *Forsythe* at 4.